[Civ. No. 12210.   Second Appellate District, Division One.—January 21, 1941.]

COUNTY NATIONAL BANK AND TRUST COMPANY OF SANTA BARBARA (a Banking Association), Respondent, v. INVESTMENT CORPORATION OF SANTA BARBARA (a Corporation), Appellant.

Alfred W. Robertson and Edward W. Schramm for Appellant.

Butcher & Haines for Respondent.

WHITE, J.—This appeal involves an action brought to recover brokerage commissions on a realty transaction had between appellant and the County of Santa Barbara. Respondent bank is the assignee of one A. F. Krebaum, who was the real estate broker in question. The written agreement relied upon by respondent to recover the commissions earned by the real estate broker was dated January 15, 1935, and was in the following words and figures:

" . . . Investment Corporation of Santa Barbara hereby delegates to A. F. Krebaum, Real Estate Broker, doing business as Krebaum & Krebaum, the sole and exclusive right to

sell and offer for sale or lease our property known as the Ambassador Ballroom located on West Cabrillo Boulevard, together with 200′ of frontage, for the price of $55,000.00 for a period of 30 days from date hereof. We further agree to pay A. F. Krebaum a commission of 5% on the listed price or any other price or terms or deal that may be offered and accepted by us. . . . ''

Following the execution of this agreement and in conformity with prior negotiations brought about by the real estate broker between the Board of Supervisors of Santa Barbara County and appellant investment company, there was executed, through the efforts of such broker, a lease and option agreement between the county and respondent bearing date January 19, 1935. In effect, this agreement first provided that appellant investment company demised and let to the lessee, County of Santa Barbara, the property in question for a period commencing February 1, 1935, and ending either on December 1, 1938, or on the date of the payment of the purchase price of the property thereafter described in the agreement under what was designated ''Option Four'', whichever date occurred first. It was, however, provided in the contract that the lease should terminate as to all the involved property on December 1, 1935, unless the option designated ''One'' was exercised by the lessee on or before the last-mentioned date, and it was similarly provided that unless ''Option Two'' and ''Option Three'' were exercised as therein provided, the lease should terminate as to portions of the property remaining at the time of the failure to exercise any of the last-named options. It was then stipulated in the agreement that the rentals should be as follows:

'' (a) For the period commencing with the 1st day of February, 1935, and ending with the date of the payment of the purchase price for the parcel of property hereinafter described under Option One, at the rate of Three Hundred ($300.00) dollars per month, pro-rated for any partial month;

'' (b) For the period commencing with the date of said last-mentioned payment, and ending with the date of the payment of the purchase price for the parcel of property hereinafter described under Option Two, at the rate of Two Hundred Twenty-five ($225.00) dollars per month, pro-rated for any partial month;

"(c) For the period commencing with the date of said last-mentioned payment, and ending with the date of the payment of the purchase price for the parcel of property hereinafter described under Option Three, at the rate of One hundred seventy-five ($175.00) dollars per month, pro-rated for any partial month;

"(d) And for the period commencing with the date of said last-mentioned payment, and ending with the date of the payment of the purchase price for the parcel of property hereinafter described under Option Four, being also the date of the termination of this lease, at the rate of One hundred twenty-five ($125.00) dollars per month, pro-rated for any partial month. . . . "

The agreement further provided that the amount of property described as covered by the lease should be reduced as the successive options were exercised to the balance of the property remaining upon which options had not been exercised. It was stipulated that the total rentals received by appellant investment company amounted to $8,743.35.

The next portion of the agreement pertinent to a consideration of this appeal refers to certain options, the first of which, if exercised by the County of Santa Barbara on or before December 1, 1935, authorized said county to purchase a described portion of the property for the sum of $15,000. The second option, which was required to be exercised by said county on or before December 1, 1936, provided for the purchase of an additional portion of the property for the further sum of $10,000. Option Three, which was required to be exercised by the county on or before December 1, 1937, authorized the purchase of another portion of the property for $10,000, while Option Four, which was required to be exercised on or before December 1, 1938, entitled the county to purchase the balance of the property for the sum of $20,000.

All of the options were exercised by the County of Santa Barbara and the total sum of $55,000 was paid to appellant investment company by such county. Appellant investment company paid the five per cent commission on such $55,000, but refused to pay any commission upon the $8,743.35 received by it under the so-called lease or rental provisions of the agreement. Trial before the court, sitting without a jury, resulted in judgment for the plaintiff, and from such judgment this appeal is prosecuted.

■  Appellant contends that the trial court fell into error in denying to it the right to show that the agreement between appellant and the County of Santa Barbara was not in fact an option and lease, but in reality was an out-and-out agreement of sale wherein the interest on the unpaid purchase price was paid under the guise of rent. Appellant offered to prove by the testimony of two witnesses that such was the understanding of the parties to the agreement. In other words, appellant's position is that it was the understanding of the parties that the purchase price was $55,000, upon which respondent's assignor was entitled to a commission of five per cent, but that the additional sum of $8,743.35, although described in the agreement as rent, was in truth interest on the deferred payments, upon which no commission was to be paid. The trial court's finding against appellant in this regard is sustained by the record. Its answer made no claim of fraud, ambiguity, uncertainty or illegality of the lease and option agreement set forth in the complaint, nor were any such issues set up by way of special plea or affirmative defenses. But even though we assume as true the claim of appellant that the lease and option agreement was framed to evade certain statutory restrictions which prohibited the County of Santa Barbara from purchasing the property outright, and for that reason installment payments were provided for and provision made in the contract to designate as rentals what was in fact interest on future payments, nevertheless, there is no testimony that the broker was a party either to the form of the purchase agreement between appellant and the county or that the broker was a party to or had any knowledge of the claimed subterfuge.  ■  The broker was entitled to his commission when, as in the instant case, he found a purchaser ready, able and willing to buy the property on the terms agreed to by the seller. (4 Cal. Jur. 583, sec. 25, and Ten-year Supp., with cases therein cited.)  ■  The right to and the amount of the broker's commission must be determined from the provisions of his contract with his principal. In the case at bar the broker's contract authorized him to procure a purchaser of the property at a price of $55,000, and then provided: ''We further agree to pay A. F. Krebaum a commission of 5% on the listed price *or any other price or terms or deal that may be offered and accepted by us.*'' When, therefore, the County of Santa Barbara expressed its readiness and willing-

ness to enter into the "deal" evidenced by the lease and option agreement, and that "deal" was "offered" to and "accepted" by appellant, the broker had earned his commission. The contract of the broker not only allowed him to offer the property for sale or to sell the same, but also empowered him to lease the property. When, therefore, he procured the County of Santa Barbara to lease for a term and then purchase the property, he was, by the terms of his contract, entitled to a commission on the lease price as well as upon the consideration for the sale.

In answer to appellant's contention that the construction placed upon the contract by the trial court, in holding that by its terms the sum of $8,743.35 constituted rentals, was unreasonable, we might say that if the rentals were intended by the parties to be interest on deferred payments, it would seem singular that the purchaser was to have possession of the property for four years free from any rental for its use and occupation. From whatever angle the situation presented by the facts of this case is viewed, it must be conceded, as the trial court found, that appellant received the sum of $8,743.35 in addition to $55,000, and received each of said sums through the efforts and services of respondent's assignor and as "terms" of and as the result of his efforts to effect a "deal" pursuant to the contract.

Both the agreement of the broker and the lease and option contract appear upon their face to be a complete statement of the undertakings of the respective parties thereto, without any ambiguity or uncertainty as to their several legal obligations. In the absence of any charge of fraud, mistake or accident, the language of each contract being clear, explicit, certain, and not involving an absurdity, the trial court was justified in interpreting it and ascertaining the intention of the parties from the language thereof. (Civ. Code, secs. 1638, 1639, 1640.) The instant case does not present circumstances which justify the application of any exception to the parol evidence rule.

From the foregoing it follows that the judgment should be, and it is, affirmed.

York, P. J., and Doran, J., concurred.